# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellant,*

v.                                                    No. 02-4935

RONALD LEE BROOKINS,
           *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge.
(CR-02-153-2)

Argued: June 3, 2003

Decided: September 25, 2003

Before WILKINS, Chief Judge, and WILLIAMS and
GREGORY, Circuit Judges.

---

Reversed by published opinion. Judge Gregory wrote the opinion, in
which Chief Judge Wilkins and Judge Williams joined.

---

## COUNSEL

**ARGUED:** Brian Lee Whisler, Assistant United States Attorney,
Norfolk, Virginia, for Appellant. Larry Mark Dash, Assistant Federal
Public Defender, Norfolk, Virginia, for Appellee. **ON BRIEF:** Paul
J. McNulty, United States Attorney, Sherrie S. Capotosto, Assistant
United States Attorney, Norfolk, Virginia, for Appellant. Frances H.
Pratt, Research and Writing Attorney, Norfolk, Virginia, for Appel-
lee.

**OPINION**

GREGORY, Circuit Judge:

Ronald Lee Brookins ("Brookins") was indicted by a federal grand jury on a charge of distribution of cocaine base. Brookins moved before trial to suppress certain evidence that was seized from his automobile shortly after the time of his arrest. The district court granted his motion and later denied the government's motion for reconsideration. Resolution of this appeal turns upon our construction of the "automobile exception" to the Fourth Amendment's warrant requirement. Because we find that the police had probable cause to search Brookins' vehicle and that the exception applies, we conclude that a warrant was not required to satisfy the Fourth Amendment's reasonableness requirement. Accordingly, we reverse the district court's suppression of the contraband discovered in Brookins' automobile.

I.

On February 20, 2001, at approximately 3:00 p.m., five officers of the Suffolk, Virginia Police Department's Special Investigation Unit were patrolling, in an unmarked car, open-air drug markets in downtown Suffolk, Virginia.[1] As they approached an intersection, the officers observed a gold Ford Expedition, backed into a driveway, which they recognized as belonging to Brookins, who had been convicted of prior drug offenses and was the subject of an ongoing narcotics investigation. One of the officers had recently received reliable confidential information that Brookins frequently made trips to this intersection to distribute narcotics. As the officers passed Brookins' vehicle, they observed Brookins and one other individual, who was later identified as Benny Harvey ("Harvey"), standing in the open doorway of the Ford Expedition. Brookins' wife, Crystal, was seated in the backseat of the vehicle. The patrolling officers continued down the street and pulled into a driveway. At this time, at least two officers observed Brookins reach into the vehicle and hand Harvey a clear plastic sand-

---

[1]We review the district court's findings of fact for clear error. Accordingly, our recital of the facts will reflect the district court's findings supplemented by inferences reasonably drawn therefrom upon the basis of the record.

wich bag. The officers next observed Brookins and Harvey walk away from the vehicle "at a fast pace." Two of the officers pursued Harvey, whom they observed discard the plastic bag, which was later found to contain 26 small, packaged rocks of suspected crack cocaine. Harvey was apprehended and searched. Upon his person, the officers discovered a two-way Radio Shack radio. Officer Coleman then received verification regarding the suspected contraband and commenced pursuit of Brookins. Soon thereafter, Officer Coleman found Brookins inside a nearby market and arrested him. During the officers' pursuit of the two suspects, Crystal Brookins fled the scene in the Ford Expedition at a high rate of speed. The officers next radio broadcasted an all points bulletin to locate the vehicle.

Approximately fifteen minutes later, a patrolman observed the gold Ford Expedition parked in the driveway of a residence belonging to Brookins' mother-in-law. As Officers Coleman and Buie approached the home, a man exited the residence and opened the door of the Ford Expedition, "like he was going to get into the vehicle." Officer Coleman prevented this individual from entering the truck. The officers found Crystal Brookins in her mother's house, and she agreed to accompany them to the police station. After obtaining the keys to the Ford Expedition, the officers conducted a cursory search of the vehicle in the driveway.

Later, while Crystal Brookins underwent questioning at the police station, officers performed a more thorough search of Brookins' vehicle. As a result of the search, the officers recovered electronic scales, a Radio Shack two-way radio, aluminum foil, and a box of razor blades. Brookins' driver's license, social security card, and vehicle registration were also recovered.

Brookins was indicted for unlawfully, knowingly and intentionally distributing in excess of five grams of a mixture of substances containing crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) and 18 U.S.C. § 2. Before trial, Brookins filed a motion to suppress the contraband discovered in his car, which the district court granted. The government then filed a motion for reconsideration, offering forfeiture as an additional basis to justify the warrantless search of the Ford Expedition. This motion was denied by the district court's superceding Memorandum and Order, which affirmed

its earlier suppression order.[2] The Government's timely appeal followed.

## II.

We review *de novo* the legal determinations, including the existence of probable cause, underlying the district court's suppression order. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *Park v. Shiflett*, 250 F.3d 843, 849-50 (4th Cir. 2001) (probable cause review); *United States v. Rusher*, 966 F.2d 868, 873 (4th Cir. 1992) (general suppression review standard). However, we "take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges." *Ornelas*, 517 U.S. at 699.

Before the district court, the government maintained that the warrantless search and seizure of Brookins' automobile was valid on several alternative grounds.[3] On appeal, the government raises three principal arguments in support of its warrantless search and seizure.[4] First, the government argues that the search was justified under the "automobile exception." Second, the government maintains that the warrantless seizure of Brookins' automobile from his mother-in-law's driveway was appropriate under *Chambers v. Maroney*, 399 U.S. 42 (1975). Finally, the government invokes state and federal forfeiture statutes authorizing the warrantless seizure of vehicles used to commit a crime.

---

[2]The district court made findings from the bench, but filed its Order in response to the motion for reconsideration. The district court designated the Order as superseding the bench ruling.

[3]For example, the government also argued that the search was valid because it was incident to a lawful arrest. The district court rejected this justification. Because the government has not challenged the district court's conclusion on this ground, we shall not review the applicability of that exception to the present case.

[4]The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "This fundamental right is preserved by the requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." *California v. Carney*, 471 U.S. 386, 390 (1985).

Under the "automobile exception," "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Maryland v. Dyson*, 527 U.S. 465, 466 (1999) (per curiam) (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam)). Under the rule set forth in *Chambers*, officers with probable cause to search an automobile at the scene of an arrest or stop may constitutionally seize the automobile and subsequently search it at the station house without obtaining a warrant. *See* 399 U.S. at 52. Finally, under the relevant forfeiture statutes, the police may seize an automobile without first obtaining a warrant when they have probable cause to believe that it is forfeitable contraband. *See Florida v. White*, 526 U.S. 559, 565 (1999).

At issue in this appeal is the availability of these exceptions to the warrant requirement under the circumstances surrounding the search and seizure of Brookins' vehicle. Prior to addressing the applicability of these exceptions, however, we must first determine whether the district court erred in concluding that the officers lacked probable cause to support the search and seizure of Brookins' automobile. Without probable cause, neither the "automobile exception" nor a forfeiture provision is available to support a warrantless search or seizure.[5]

A.

In *Ornelas*, the Supreme Court, after noting that probable cause is not susceptible to precise definition, nonetheless described it as "existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." 517 U.S. at 696; *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983) ("[W]hether . . . given all the circumstances . . . there is a *fair probability* that contraband or evidence of a crime will be found in a particular place." (emphasis added)). Supplementing this definition, the Court noted:

---

[5]Similarly, the availability of *Chambers* to justify the warrantless seizure on these facts turns upon whether the search would be permissible in the first instance under either the "automobile exception" or a forfeiture statute.

> The principal components of a determination of . . . proba-
> ble cause will be the events which occurred leading up to
> the stop or search, and then the decision whether these his-
> torical facts, viewed from the standpoint of an objectively
> reasonable police officer, amount to . . . probable cause.

*Ornelas*, 517 U.S. at 696.

Accordingly, the district court noted the following with respect to
the facts surrounding Brookins' arrest and concluded that the officers
possessed probable cause to search for contraband in his vehicle at the
time of arrest:

> Defendant has previously been convicted of drug offences,
> and a reliable confidential informant told officers that the
> Defendant made narcotics deliveries in the vicinity of E.
> Washington Street . . . . [O]fficers stated that they saw
> Defendant retrieve a package from the front seat of the car
> and pass it to Harvey, who later discarded it. When the
> package was recovered by officers, it was determined it con-
> tained crack cocaine. These facts are sufficient to support a
> reasonable belief by the officers that contraband may have
> been present in the vehicle.

However, the district court concluded that probable cause became
stale during the fifteen-minute interval between the officers' arrest of
Brookins and the subsequent seizure of his Ford Expedition from his
mother-in-law's driveway.

The lower court offered two justifications for this conclusion: first,
the district court was not "firmly convinced" that the officers had
actually witnessed a passing of drugs; and second, in its view, the
officers had "allowed" the vehicle to depart the scene, which might
have permitted Crystal Brookins to dispose of contraband while flee-
ing from the scene of her husband's arrest. Citing these observations,
the district court concluded that it was not clear that a reasonable offi-
cer would determine that probable cause existed at the time of the sei-
zure of the Ford Expedition. Critical of the officers' approach to the
search, the district court maintained that the vehicle should have been

searched at the time of arrest or seized and searched later upon the issuance of a warrant.

Although Brookins' wife may have had an opportunity to dispose of the incriminating evidence which was ultimately discovered in the car, we do not find that this mere possibility should have led a reasonable officer to conclude that probable cause no longer existed when the automobile was located fifteen minutes later. Brookins' wife might simply have imagined that she had successfully evaded the police and that she would have time to dispose of the contraband once in a safe place — such as her mother's home. Alternatively, not knowing whether the police were in pursuit, or when they might catch-up with her, Crystal Brookins might have feared that she would be observed or stopped in the process of jettisoning contraband. Given the plausibility of any of several such hypothetical alternatives, we cannot conclude that probable cause no longer existed when the vehicle was seized. Of course, if the officers had undertaken this search two weeks after the arrest, we would have little trouble concluding, *ceteris paribus*, that probable cause had become stale during the intervening period. However, in this instance, only fifteen minutes had transpired between Crystal Brookins' dash from the scene of arrest and the discovery of the vehicle. Reviewing the relevant "historical facts," none of which is in dispute, we conclude that the district court erred when it found that probable cause no longer obtained at the time of seizure.

## B.

The district court next proceeded to analyze whether, assuming that probable cause had existed, a warrantless search would have been constitutionally permissible pursuant to the "automobile exception," which was established under *Carroll v. United States*, 267 U.S. 132 (1925), and its progeny. The district court interpreted the *Carroll* line of cases to require a showing of exigency, notwithstanding recent Supreme Court precedent specifically disavowing the existence of any such separate requirement.[6] The district court found in *Carroll* a

---

[6]The district court acknowledged the Supreme Court's statement in *Maryland v. Dyson*, 527 U.S. 465, 467 (1999), that "the 'automobile

requirement that the subject automobile be, in a somewhat phenome-
nological sense,[7] "readily mobile" to justify a warrantless search.
Applying this formulation of the rule, the district court concluded that
on the facts presented — viz. the ease with which the officers could
have blocked Brookins' automobile and the fact that the Ford Expedi-
tion was unoccupied when discovered by the officers — a warrant
was required to search and seize the automobile because it was not
"readily mobile."

On appeal, Brookins proposes an interpretation of the "automobile
exception," which he grounds largely in *Coolidge v. New Hampshire*,
403 U.S. 443 (1971). In *Coolidge*, the Supreme Court, by the opinion
of a four-justice plurality, declined to apply *Carroll* under circum-
stances evincing no exigency whatsoever. Specifically, the defen-
dant's automobile was parked in his own driveway and contained no
contraband. Additionally, the police had developed probable cause
well in advance of the warrantless search. Brookins maintains that
*Coolidge* represents the sole Supreme Court decision to address
"head-on" the warrantless search of an automobile at a private resi-
dence. Based upon the facts of *Coolidge*, Brookins would posit a
bright-line rule, whereby the automobile exception may never apply
when a vehicle is stationed on private, residential property.[8]

---

exception' has no separate exigency requirement." *See also Labron*, 518
U.S. at 940 (summarily reversing the decision of the Supreme Court of
Pennsylvania requiring separate showing of "unforseen circumstances"
or exigency). It is worthwhile to note that the standard for obtaining a
summary reversal of a lower court's judgment is strenuous. As the *Dyson*
court noted, "summary reversal does not decide any new or unanswered
question of law, but simply corrects a lower court's *demonstrably erro-
neous* application of federal law." 527 U.S. at 466 n.1 (emphasis added).

[7]The district court required evidence that the vehicle was mobile under
the totality of circumstances surrounding its seizure. For the reasons dis-
cussed below, we decline to adopt this rule as a general requirement.
Although this consideration may be relevant in a private, residential set-
ting, we view ready mobility as defining the nature of the *use* of the vehi-
cle, rather than its ability to be moved by a defendant upon stop or
seizure.

[8]We decline to adopt this construction of *Coolidge*. Nor do we find it
necessary to determine the contours of the expectation of privacy in and

Brookins seeks additional support for this theory in *California v. Carney*, 471 U.S. 386, 390 (1985), where the Supreme Court held that a mobile home, on the facts presented, was more characteristic of an automobile than a fixed residence. The Court did look to the nature of the location where the vehicle was discovered, but only to ascertain whether the vehicle itself was, in an ontological sense, in use as a "movable vessel" or as a fixed residence. Hence, the Court's reference to a "place not regularly used for residential purposes," *Carney*, 471 U.S. at 392 — from which the police would be less likely to infer that the object was residential in nature — served as a guidepost to determine, *ab initio*, whether the object encountered was a vehicle or a residence. After considering these circumstances, the Court concluded that the warrantless search of the mobile home was covered by the "automobile exception." *Id.* at 394. Brookins' invocation of *Carney* to buttress his reading of *Coolidge* as generating a bright-line approach to the application of the "automobile exception" is therefore flawed. The Supreme Court has expressly held that the "automobile exception" is applicable "[i]f a car is readily mobile and probable cause exists to believe it contains contraband." *Dyson*, 527 U.S. at 466 (internal quotation and citation omitted).

In light of the Supreme Court's holding in *Dyson*, we find the "automobile exception" applicable to the case before us. First, the motor vehicle at issue was clearly operational and therefore "readily movable." Second, as discussed in greater detail above, the police officers had probable cause to conclude that there was contraband in the vehicle, as the party responsible for the vehicle's flight, Brookins' wife, was present on the scene at her mother's home. Given these facts, the warrantless search of Brookins' vehicle by law enforcement officers did not violate his Fourth Amendment rights.

## C.

Under the rule of *Chambers v. Maroney*, 399 U.S. 42 (1975), and *Texas v. White*, 423 U.S. 67 (1975) (per curiam), "[o]fficers with

---

around one's private property. Although heightened privacy interests may be triggered when a vehicle is encountered on private property, the *Coolidge* plurality opinion cannot be fairly read to create a bright-line rule precluding warrantless searches on private property under all circumstances.

probable cause to search an automobile at the scene where it was stopped . . . [may] constitutionally do so later at the station house without first obtaining a warrant." The district court acknowledged the government's argument based upon *Chambers* and *White* in a footnote, but interpreted these cases to require that the vehicle be seized immediately incident to arrest. Because the officers "allowed" the vehicle to leave the arrest scene, the district court found that there was no lawful warrantless seizure, and that the subsequent search was therefore impermissible.

We decline to adopt this interpretation of the controlling precedent. Although both cases happened to involve situations in which the car was seized immediately after an arrest, the reasoning supporting the subsequent search was that probable cause still obtained. "[P]olice officers with probable cause . . . [who may] search an automobile at the scene where it was stopped could do so later at the station house without first obtaining a warrant. There, as here, '[t]he probable-cause factor' developed at the scene 'still obtained at the station house.'" *White*, 423 U.S. at 68 (quoting *Chambers*, 399 U.S. at 52). Hence, the ongoing existence of probable cause is what animated these decisions, not the factual happenstance of search incident to arrest. Because we conclude that the officers were entitled to search Brookins' automobile without obtaining a warrant at the time that it was discovered, the seizure and subsequent searches were lawful.[9]

### III.

Because we find that the district court erred in concluding that the officers did not have probable cause to search Brookins' vehicle at the time it was seized, and because we find that the search would have been constitutional under *Carroll* at the time the automobile was seized, we uphold both the seizure and subsequent searches as reasonable under the Fourth Amendment. Accordingly, the district court's order granting suppression is

*REVERSED*.

---

[9]Having concluded that the seizure was justified under *Texas v. White* and *Chambers v. Maroney*, we need not address the applicability of the relevant forfeiture statutes.