OPINION
GREGORY, Circuit Judge:
Defendant-appellant Travis Winfield Johnson appeals an order of the United States District Court for the Northern District of West Virginia denying his pretrial motion to suppress, among other things, a firearm found in the passenger compartment of his automobile. The district court denied Johnson’s suppression *324 motion on two grounds. First, the court found that the government, through the testimony of two of the officers that searched Johnson’s automobile, established by a preponderance of the evidence that Johnson consented to the search of his automobile. Second, the court found that probable cause existed to search the passenger compartment of Johnson’s automobile.
On appeal, Johnson argues that the district court’s finding that he consented to the search of his automobile is erroneous because the magistrate judge, who conducted the suppression hearing and was thus able to observe the demeanor of the officers, concluded that he was “not satisfied that ... [Johnson] gave consent to search [his] vehicle.” J.A. 107. Consequently, Johnson asserts that the district court should have deferred to the magistrate judge’s conclusion that there was insufficient evidence to establish consent. In addition, Johnson argues that the district court erred by finding that probable cause existed to search the passenger compartment of his automobile.
Because we conclude that the firearm in the passenger compartment of Johnson’s automobile was properly seized under the plain view doctrine, we affirm the district court’s denial of Johnson’s suppression motion.
I.
On March 11, 2002, Johnson drove to the home of Fulton Walker, an informant for the Eastern Panhandle Drag and Violent Crimes Task Force (the “EPDV Crimes Task Force”), to deliver approximately 5,404 grams of marijuana as agreed during a number of controlled telephone conversations. Once outside of Walker’s home, Deputy Snyder and Detective Witt observed Johnson, via video surveillance, remove a number of marijuana packages from a duffle bag located in the trunk of his automobile and place them into a second duffle bag. Deputy Snyder and Detective Witt then observed Johnson place the original duffle bag, which appeared to continue to contain marijuana, back into the trunk of his automobile and carry the second duffle bag into Walker’s home. After Johnson entered Walker’s home, State Trooper Bean and two other officers observed him, via video surveillance, remove the marijuana packages from the duffle bag that he carried into Walker’s home and place them onto a coffee table. Upon doing so, Johnson was apprehended and escorted out of Walker’s home. Johnson’s automobile was thereafter searched by the EPDV Crimes Task Force. During this search, the EPDV Crimes Task Force retrieved the duffle bag left by Johnson in the trunk of his automobile and confirmed that it contained marijuana. In addition, the EPDV Crimes Task Force retrieved a loaded .40 caliber glock handgun from the passenger compartment of Johnson’s automobile. Based on these discoveries, the EPDV Crimes Task Force confiscated Johnson’s automobile and the contraband found therein.[1] The EPDV Crimes Task Force did not, however, place Johnson under arrest. Instead, the EPDV Crimes Task Force sought to get Johnson to cooperate with its investigation by identifying his supplier and arranging a controlled purchase.
On October 1, 2002, Johnson, after having declined to cooperate with the EPDV Crimes Task Force, was charged and indicted in the United States District Court *325 for the Northern District of West Virginia for (1) conspiring to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(D) and 846, (2) possessing with intent to distribute 5,404 grams of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D), and (3) using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). On November 7, 2002, Johnson filed a pretrial motion to suppress, among other things, the firearm found in the passenger compartment of his automobile. The district court, pursuant to the Federal Magistrate Act, 28 U.S.C. § 636(b)(1)(B), referred Johnson’s suppression motion to a magistrate judge for an evidentiary hearing, which was held on November 22nd.
At the hearing, the government called Deputy Snyder as a witness. Deputy Snyder testified that he saw Johnson remove marijuana packages from a duffle bag located in the trunk of his automobile, place said packages into a second duffle bag and leave the original duffle bag, which from his observations appeared to still contain marijuana, back into the trunk of his automobile. Deputy Snyder also testified that, subsequent to Johnson’s apprehension, he looked into the passenger compartment of Johnson’s automobile, through the windows, and did not see a firearm in plain view. Specifically, Deputy Snyder testified that he saw “some C.D.s, some paraphernalia, that type — papers, that type of thing, but nothing ... of value” when he looked into Johnson’s automobile. J.A. 58. With regard to Johnson’s consent, Deputy Snyder testified that Johnson answered “yes” when State Trooper Bean asked: “[Johnson], may I search your automobile?” Id. at 60. Deputy Snyder further testified, however, that Johnson’s consent was not recorded on the audiotapes and videotapes because they often turn off their equipment “[o]nce a transaction is completed, and [they] have gathered the evidence that [they] are gathering related to [the] specific count.” Id. at 61. Moreover, Deputy Snyder testified that Johnson’s consent was not recorded in writing even though consent forms were available and they remembered to provide Johnson with a property receipt.
In addition to Deputy Snyder, the government called State Trooper Bean as a witness. State Trooper Bean testified that they had been informed by Walker that Johnson customarily transported the marijuana in the trunk of his automobile. He also testified that Deputy Snyder and Detective Witt observed Johnson remove marijuana packages from a duffle bag located in the trunk of his automobile and place that same duffle bag, which they believed still contained marijuana, back into the trunk of his automobile. In addition, State Trooper Bean testified that Detective Witt informed him, upon escorting Johnson out of Walker’s home, that he saw in plain view a firearm inside the passenger compartment of Johnson’s automobile. Id. at 83. Moreover, State Trooper Bean testified that Detective Witt, after seeing the firearm in plain view, pointed the weapon out to him. Id. As to Johnson’s consent, State Trooper Bean testified that Johnson responded that it was “fine” when he asked him “if it was all [sic] right if [they] looked through his vehicle.” Id. at 74-75. He further testified, however, that Johnson’s consent was not recorded on an audiotape or videotape because they had turned off the audio and video equipment “before [he] asked ... Johnson if [he] could search his car.” Id. at 79. State Trooper Bean also testified that Johnson’s consent was not recorded in writing.
After Deputy Snyder and State Trooper Bean testified, Johnson testified for the limited purpose of stating that he did not consent to the search of his automobile. *326 Specifically, Johnson testified that he answered “no” when asked by “the police officers [if] they could search [his] car.” Id. at 89. When asked if he told the officers that “they couldn’t search [his] car,” Johnson testified that the officers “did ask for consent” and that he “told them that they couldn’t search [his automobile].” Id. At the conclusion of Johnson’s suppression hearing, the magistrate judge stated:
It does bother me ... that we have video going and audio going and we have briefcases full of blank consent forms, that in these cases why if [defendants are consenting, why don’t we get something done? Why don’t we get something in writing or something on tape? ... [I]t just makes these cases so much simpler. If the defendants are supposedly cooperating, I’m sure they would sign a form.
Id. at 97.
On November 25, 2002, the magistrate judge issued a report setting forth his proposed findings and recommendations. In his report, the magistrate judge recommended to the district court that Johnson’s motion to suppress the firearm found in the passenger compartment of his vehicle be denied on the basis that probable cause existed to search the full interior of Johnson’s automobile. The magistrate judge also recommended, however, that Johnson’s suppression motion not be denied on the basis that he consented to the search of his automobile. In doing so, the magistrate judge wrote that he was “not satisfied that ... [Johnson] gave consent to search [his] vehicle.” Id. at 107.
On November 27th, the government objected to the magistrate judge’s recommendation regarding Johnson’s consent to the search of his automobile. On December 2nd, Johnson objected to the magistrate judge’s recommendation that his suppression motion be denied on the basis that the officers had probable cause to search the full interior of his automobile. Four days later, however, on December 6th, Johnson entered a plea agreement through which he agreed to plead guilty to possessing with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D), and using, carrying and possessing a firearm during, in relation to and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). In an addendum to his plea agreement, also dated December 6th, Johnson expressly reserved the right to appeal the denial of his suppression motion.
On December 12th, the district court held a change of plea hearing during which Johnson entered his guilty plea. At this hearing, the government had State Trooper Bean testify about the events of March 11th. In doing so, State Trooper Bean testified that the firearm found inside Johnson’s automobile was “in the passenger compartment ... between the seat and the console.” Id. at 146. When cross-examined by Johnson’s counsel as to the actual location of the firearm, State Trooper Bean testified that, although he was uncertain whether the firearm was inside the compartment “between the driver’s side and the passenger side,” he was sure it was in the area “between a seat and a console ... where the gear shift is located, on the right side of the driver’s seat.” Id. at 148. On December 19th, the district court, without holding its own suppression hearing, issued an order accepting in part the magistrate judge’s proposed findings and recommendations. Specifically, the district court accepted the magistrate judge’s recommendation that Johnson’s motion to suppress the firearm be denied on the basis that probable cause existed to search Johnson’s entire vehicle. The district court, however, rejected the magis *327 trate judge’s recommendation finding that the government failed to establish by a preponderance of the evidence that Johnson consented to the search of his automobile. Accordingly, the district court denied Johnson’s motion to suppress the firearm on the grounds that he consented to the search and that probable cause existed to search the passenger compartment of his automobile.
On May 14, 2003, Johnson was sentenced to a total term of imprisonment of seventy-five months. Specifically, Johnson was sentenced to fifteen months of imprisonment for possessing with intent to distribute marijuana and sixty months of imprisonment for using, carrying and possessing a firearm during, in relation to and in furtherance of a drug trafficking crime. This appeal followed.
II.
“When considering on appeal a motion to suppress evidence, we review a district court’s factual findings for clear error and its legal determinations de novo.” United States v. Perkins, 363 F.3d 317, 320 (4th Cir.2004). Given that the district court denied Johnson’s suppression motion, we construe the evidence in the light most favorable to the government. Id.
A.
The Fourth Amendment protects “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const, amend. IV. Warrant-less searches, the Supreme Court has held, are per se unreasonable unless they fall under a specific exception to the Fourth Amendment’s warrant requirement. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One such exception is the “plain view doctrine.” Horton v. California, 496 U.S. 128, 137, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)(“The ‘plain view’ doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable.”). Under this doctrine, officers may seize an object without a warrant if (1) the object is actually in plain view; (2) the officers are lawfully located in a place from which the object can be plainly seen; (3) the object’s incriminating character is immediately apparent; and (4) the officers have a lawful right of access to the object. Id. at 136-37. We discuss each of these prongs in turn.
1.
At Johnson’s suppression hearing, Deputy Snyder testified that he did not see a firearm in plain view when he looked into Johnson’s automobile. State Trooper Bean, on the other hand, testified that Detective Witt looked inside of Johnson’s automobile and saw in the passenger compartment a firearm in plain view. In addition, State Trooper Bean testified that Detective Witt pointed the weapon out to him, which was located “between a seat and a console ... where the gear shift is located, on the right side of the driver’s seat.” J.A. 148. Because we construe the evidence in the light most favorable to the government when a district court denies a motion to suppress evidence, Perkins, 363 F.3d at 320, we conclude, as explained below, that State Trooper Bean’s testimony is sufficient to establish that the firearm found in the passenger compartment of Johnson’s automobile was in plain view.
After reviewing the record, we find nothing to suggest that the magistrate judge or district court questioned the cred *328 ibility of State Trooper Bean.[2] In addition, Johnson himself did not assert that the firearm was not in plain view when he testified at the suppression hearing or challenged State Trooper Bean’s testimony as to the actual location of the firearm. Moreover, Deputy Snyder never called into question State Trooper Bean’s testimony. Rather, he simply testified as to what he saw when he looked into Johnson’s automobile. Lastly, the testimony of Deputy Snyder and State Trooper Bean, while not corroborating each other, are not in conflict. Deputy Snyder testified that upon looking into Johnson’s automobile he only saw “some C.D.s, some paraphernalia, that type — papers, that type of thing.” J.A. 58. Thus, it is entirely possible that these things had the effect of preventing Deputy Snyder from seeing the firearm in plain view whereas they did not have the same effect on State Trooper Bean and Detective Witt.
2.
There is no question that State Trooper Bean and Detective Witt were in a lawful position when they saw the firearm in the passenger compartment of Johnson’s automobile. First, State Trooper Bean and Detective Witt saw the firearm while standing outside of Johnson’s automobile and peering in through the windows. Second, State Trooper Bean and Detective Witt were lawfully present on Walker’s property.
3.
In order for the incriminating character of an object to be immediately apparent, police must have probable cause to believe that the object in question is contraband or evidence of a crime. Arizona v. Hicks, 480 U.S. 321, 326, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987)(‘We now hold that probable cause is required [to invoke the plain view doctrine].”). To have probable cause, police need not “know” or have an “unduly high degree of certainty” that the object in question is contraband or evidence of a crime. Texas v. Brown, 460 U.S. 730, 741, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)(plurality opinion). Rather, they need only believe, under the circumstances and based on their experience, that there is a probability that the object is contraband or evidence of a crime. Id. at 742, 103 S.Ct. 1535. Here, State Trooper Bean and Detective Witt had probable cause to believe that the firearm in the passenger compartment of Johnson’s automobile was contraband or evidence of a crime. First, State Trooper Bean and Detective Witt were aware that Johnson, during several controlled telephone conversations, had agreed to deliver approximately 5,404 grams of marijuana to Walker’s home. Second, they observed Johnson drive, by himself, to Walker’s home on the agreed upon date, remove several marijuana packages from a duffle bag located in the trunk of his automobile and place that same duffle bag, which appeared to continue to contain marijuana, back into the trunk of his automobile. Third, they apprehended Johnson in possession of a second duffle bag, which he carried into Walker’s home, containing marijuana.
4.
The requirement that officers have a lawful right of access to an object is the *329 “corollary of the familiar principle ... that no amount of probable cause can justify a warrantless search or seizure absent ‘exigent circumstances.’ ” Horton, 496 U.S. at 137 n. 7, 110 S.Ct. 2301. Given that the firearm was inside of Johnson’s automobile, which was operational, exigent circumstances existed because automobiles by their very nature are mobile and thus create a risk that the object in question will be moved, hidden or discarded before police can obtain a search warrant. This risk continues to exist even when, as is the case here, the defendant has been apprehended because someone else could possibly move the car and in the process hide or discard the object in question. United States v. Brookins, 345 F.3d 231, 237 n. 7 (4th Cir.2003)(“[W]e view ready mobility as defining the nature of the use of the vehicle, rather than its ability to be moved by a defendant upon stop or seizure.”)
B.
Accordingly, we find that all four prongs of the plain view doctrine have been satisfied and thus conclude that the firearm in the passenger compartment of Johnson’s automobile was properly seized. We therefore affirm the district court’s denial of Johnson’s suppression motion.

AFFIRMED.

. Johnson's automobile was later returned when its value was determined to be insufficient to justify forfeiture.

. The fact that State Trooper Bean's testimony did not convince the magistrate judge that Johnson consented to the search of his automobile does not mean that the magistrate judge doubted his credibility. Rather, it simply means that the magistrate judge concluded that State Trooper Bean's testimony, when considered in light of the fact that Johnson denied consenting to the search and Johnson’s alleged consent could have been recorded in writing and on an audiotape or videotape, was insufficient to establish by a preponderance of the evidence that Johnson consented to the search.