**UNITED STATES of America,**
**Plaintiff,**

v.

**Nakia Lerone GERMAN, Defendant.**

**C.A. No.: 2:07–CR–1385.**

United States District Court,
D. South Carolina,
Charleston Division.

July 10, 2009.

John C. Duane, U.S. Attorneys Office, Charleston, SC, for Plaintiff.

### ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the Court on Defendant Nakia Lerone German's ("Defendant") Motion to Suppress evidence. For the reasons set forth herein, the Court denies Defendant's Motion.

### BACKGROUND

On January 16, 2007, officers of the Mount Pleasant Police Department arrested Defendant on a report of domestic violence outside the Mount Pleasant Town Complex. Defendant had been at the Complex to pay a traffic ticket, where he had gotten into a heated argument with his common law wife, Kelly Adams ("Adams"). Defendant had been loudly yelling and acting physically aggressive towards Ms. Adams, allegedly grabbing her by the arm and dragging her out of the lobby. When police arrived, Defendant was handcuffed and placed in the back of a police vehicle.

While in the back of the police vehicle, Defendant was asked how he got to the Town Complex, and informed police that he had driven there in his car, which was parked in the parking lot. Defendant asked police if he could call his mother to come drive the car away, so it would not be towed, but was informed that he could not. Defendant then asked if it would be possible for Ms. Adams to drive the car home.

While simultaneously being questioned by a separate officer about the incident, Ms. Adams informed police that Defendant was a convicted felon, and that he had a shotgun in the trunk of his vehicle. Upon hearing this, police informed Defendant that Ms. Adams could not drive his car home, and conducted a search of his vehicle. Police did in fact find a shotgun, which was later discovered to be stolen, in the trunk of Defendant's vehicle.

The shotgun in question had been stolen out of a motor vehicle in Hanahan, South Carolina on January 8, eight days before Defendant's arrest at the Mount Pleasant Town Complex. Around the same time period, a car was broken into nearby the vehicle from which the shotgun had been stolen, and a credit card had been removed from that vehicle. Based upon the close geographical and chronological proximity, Hanahan police believed the two incidents to be linked. The stolen credit card was used at a nearby Exxon gas station shortly after it was stolen. The Hanahan police obtained security video from the Exxon station for the transaction, and on January 24 determined that the person who used the stolen credit card was Defendant.

Upon learning that Defendant had been arrested on other charges, Hanahan police went to the Charleston County Detention Center to interview Defendant. At this

time, after being given his *Miranda* warnings, Defendant admitted to stealing both the shotgun and the credit card. Hanahan police at this time verified that the shotgun seized from Defendant's trunk was in fact the same shotgun that had been stolen from the vehicle in Hanahan.

On November 14, 2007, Defendant was indicted in this Court on three counts. He was charged with (1) being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e); (2) possession of a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924(a)(2); and (3) theft of a firearm in violation of 18 U.S.C. § 924(*l*). On May 13, 2009, Defendant filed a Motion to Suppress evidence, seeking to suppress the seizure of the shotgun from being allowed at trial. On June 10, the Government filed a Response in Opposition to this Motion. A hearing was held on this matter on June 22 in the Hollings Judicial Center in Charleston, South Carolina.

### ANALYSIS

The Fourth Amendment states, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

### I. Search Incident to Arrest

■ The Government's first ground for justifying the search is that Defendant's car was searched incident to a lawful arrest. Defendant does not contest that he was lawfully arrested.

However, this claim fails as a matter of law. The Supreme Court of the United States recently decided that a search incident to a lawful arrest may only be done with regard to an automobile when the arrestee is not secured and is within reaching distance of some compartment of the automobile. *Arizona v. Gant,* — U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). This holding would be squarely on point in this case, and Defendant was under arrest in the back seat of a police car at the time of the search, so police could not lawfully search Defendant's vehicle as a search incident to a lawful arrest.

Accordingly, this Court will not deny Defendant's Motion to Suppress evidence on these grounds.

### II. Inventory Search

■ Government next claims that this search was lawful because it was an inventory search. Police may conduct an inventory search on a vehicle after lawfully taking custody of it, so long as the search is conducted pursuant to standard police procedures. *South Dakota v. Opperman,* 428 U.S. 364, 376, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). The Fourth Circuit has held: "A proper inventory search is merely an incidental administrative step following arrest and preceding incarceration, conducted to protect the arrestee from theft of his possessions, to protect the police from false accusations of theft, and to remove dangerous items from the arrestee prior to his jailing." *United States v. Banks,* 482 F.3d 733, 739 (4th Cir. 2007) (internal citations and quotation marks omitted). An inventory search, however, must "be conducted according to standardized criteria," such as a uniform police department policy. *Colorado v. Bertine,* 479 U.S. 367, 374 n. 6, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). For an inventory search to be lawful, the vehicle searched must be in the lawful custody of the police. "If the vehicle is in lawful custody, the police may inventory the vehicle, if such inventories are routine and conducted pursuant to the

standard police procedures, so long as the purpose of the inventory is to secure the car or its contents and not to gather incriminating evidence against the owner." *United States v. Brown,* 787 F.2d 929, 932 (4th Cir.1986). *United States v. Murphy,* 552 F.3d 405, 412 (4th Cir.), *cert. denied,* —— U.S. ——, 129 S.Ct. 2016, 173 L.Ed.2d 1109 (2009).

According to Paragraph 1(B)(5) of the Mount Pleasant Police Department's policy regarding Vehicle Towing and Impounding, the police may take lawful possession (and therefore may lawfully search and inventory) of a vehicle "[w]hen the driver of the vehicle is taken into custody by the police department and the vehicle would be left unattended." (Pl.'s Ex. 1.)

Mount Pleasant Police Department Guidelines also say that "[a]nother person may be called to the scene for that purpose, if it would take no longer to accomplish this than to get a contract towing service to the scene. Otherwise, the vehicle will be towed." The Government asserts that "[o]bviously the policy permits the police officer to use his or her discretion when making a determination whether to permit another driver to take the vehicle, or call another driver to the scene for purposes of removing a vehicle."

However, it certainly does not permit the use of absolute discretion. The Supreme Court has held that discretion in such situations "must be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of a crime.'" *Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990) (quoting *Colorado v. Bertine,* 479 U.S. 367, 376, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (Blackmun, J., concurring)).

Here, no factual evidence has been submitted about the availability of alternative arrangements of removing the car from Town of Mount Pleasant property. It is unknown where Defendant's mother lived, and how long it would have taken her to arrive at the location and remove Defendant's automobile. Furthermore, Defendant asserts that Ms. Adams, who was on the scene, was willing to remove the automobile from the premises immediately. However, the Government asserts that this was impractical given that she was the victim of the domestic violence complaint. Also, even though it appears that any harm to her was slight and superficial, she was taken by a case worker to a hospital out of an abundance of caution. During testimony at the hearing, the police officer who made the decision to search Defendant's car did not claim that Defendant was not allowed to have someone else come to the municipal complex and move the car because it would take too long; rather, the police officer explicitly acknowledged that the decision was made because police believed that there was a shotgun in the car. Since police have acknowledged that seizing the weapon from the car was the primary motivation in searching Defendant's automobile, this search was not "designed to produce an inventory," but rather to discover possible criminal evidence. The Supreme Court has explicitly held that such situations are not valid inventory searches.

Accordingly, this was not a lawful inventory search, so this Court will not deny Defendant's Motion to Suppress evidence on these grounds.

The Court further notes that this case illustrates a disharmony in the current state of Fourth Amendment jurisprudence. The Court in *Gant* held that police could not lawfully search a suspect's automobile incident to a lawful arrest unless that subject was unsecured and could possibly reach for an item or items in the automo-

bile's interior. The suspect in that case, Rodney Gant, was arrested for driving on a suspended driver's license while walking away from his car, which he had just parked in a friend's driveway. After placing him under arrest, police searched his car and found illegal drugs in the car.

However, that case was unusual, in that the arrest took place after the car had been parked on private property. In most cases in which a suspect is arrested and his or her vehicle is searched, the vehicle is located on a public roadway or a parking lot. Under the current state of the law with regard to administrative searches, many police departments are allowed to formulate their own policies for when vehicles on public property may be towed. And many police departments have policies like the policy adopted by the Town of Mount Pleasant in the present case, which is that someone under arrest will have their car towed if it would take longer to have someone else arrive on the scene and move it than it would take to have the automobile towed. However, the fact of the matter is that most municipalities of any substantial size either have tow trucks of their own used solely for the purpose of towing vehicles on public roadways or other public areas, or have a private towing company or companies on retainer to do this. Because of this, municipalities are often able to have a tow truck on the scene to tow a vehicle within a matter of minutes, which is much quicker than any third party relative or acquaintance of the arrested could reasonably be expected to arrive upon the scene to move the vehicle. The matter is further complicated by the fact that it is often left to the discretion of the law enforcement officer on the scene to determine whether or not someone can arrive to move the vehicle before a tow truck can arrive.

It is not hard to imagine, then, a scenario in which police suspect someone of having evidence of a crime in his or her automobile, but lack probable cause. If the suspect is then pulled over and arrested for a crime such as driving with a suspended license, expired registration, or without valid insurance, the police could not, legally, search the automobile incident to a valid arrest for any of those charges. They could, however, at least under the existing standard for administrative searches, use their discretion to determine that the person could not get someone to the scene to remove the automobile within the ten minutes it would take for a municipal tow truck to arrive, and therefore order the automobile subject to an administrative search. They would then have the ability to search the car for inventory purposes, but would be allowed to use any evidence uncovered in the search in a subsequent criminal proceeding. In the end, therefore, police could use the administrative search as a pretext for searching an arrested suspect's automobile without a warrant or probable case, and would be able to take substantially identical actions to those the Supreme Court held to be unconstitutional in *Gant*. The present standard for administrative searches, then, would seem to substantially undermine *Gant* in many instances.

In this case, however, the Court need not confront this issue, since police explicitly acknowledged that the main reason they decided to search Defendant's automobile was that they believed him to have a gun in the car. Since the purpose of the search was to uncover criminal evidence, not to simply conduct an inventory pursuant to an administrative search, this does not fall under the administrative search exception to the warrant requirement.

### III. Probable Cause

■ The Court next turns to the issue of whether or not the Government had probable cause to search Defendant's automobile.

 One of the most well-established exceptions to the Fourth Amendment's warrant requirement is the motor vehicle exception. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). "Under the 'automobile exception,' '[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more.'" *United States v. Brookins,* 345 F.3d 231, 235 (4th Cir.2003) (quoting *Maryland v. Dyson,* 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999)). Here, the Government asserts that this search of Defendant's vehicle was supported by probable cause, and was therefore lawful under the automobile exception to the Fourth Amendment's warrant requirement. Probable cause is to be determined by examining the totality of the circumstances, and determining whether it is more likely than not that the vehicle contained contraband. *See United States v. Dickey–Bey,* 393 F.3d 449, 457 (4th Cir. 2004).

Based upon the pleadings of the parties, it appears that the main information upon which the Government can claim probable cause is Ms. Adams' telling police officers that Defendant was a felon, and had a gun in the trunk of his car. The Government claims that this was sufficient to make it more likely than not that Defendant had a gun in the trunk of his car, and that the search was therefore lawful.

While Ms. Adams was probably biased, given that she had very recently been the victim of domestic violence by Defendant, this does not necessarily invalidate the information given by her to police. The fact is that police questioning revealed that she was Defendant's common law wife, that she lived with Defendant and was intimately aware of his affairs and possessions, and that she had ridden with Defendant to the Town of Mount Pleasant complex in the automobile in question. Defendant has not disputed any of this information. All of these are very strong indicia of reliability, and gave police sound reasons to believe that Ms. Adams probably knew whether or not her common law husband was a felon, and knew whether or not he had a shotgun in the car. Examining the totality of the circumstances in this case, this Court determines that based upon the information that police had at the time, it was, in fact, more likely than not that Defendant had a shotgun in his automobile.[1]

Accordingly, under the standard articulated by the Supreme Court in *Dyson,* police had probable cause and were entitled to lawfully conduct a search of Defendant's automobile.[2]

---

1. This conclusion is not affected by the fact that the automobile was on town property and could have been secured while a warrant was obtained. While it is true that one of the reasons behind the automobile exception to the warrant requirement is the mobile nature of motor vehicles and the attendant risk of removal or destruction of evidence, the Supreme Court has also been quite clear that the exception is also based upon the fact that one has a substantially diminished expectation of privacy in one's automobile relative to one's home. Courts have upheld warrantless searches of vehicles where police had probable cause even when such vehicles were safeguarded on police property based upon the diminished expectation of privacy. *See, e.g., United States v. Matthews,* 32 F.3d 294 (7th Cir.1994).

2. The Court finally notes that the seizure of the shotgun was not a crucial part of the criminal investigation. Significantly, the Town of Mount Pleasant never actually used the gun in conjunction with a criminal charge against Defendant. It is not a crime in the state of South Carolina for a felon to own a shotgun. S.C.Code Ann. § 16–23–10–50. The Mount Pleasant Police Department simply took the shotgun into custody for safekeeping. It was not until the Hanahan Police Department investigator discovered that De-

## CONCLUSION

For the foregoing reasons, it is therefore **ORDERED** that Defendant Nakia Lerone German's Motion to Suppress Evidence is **DENIED.**

**AND IT IS SO ORDERED.**

fendant had stolen the gun, and Defendant had already made a confession acknowledging that he had stolen the shotgun from an automobile in Hanahan, that the State attempted to introduce the gun as criminal evidence. Therefore, the State already independently obtained overwhelming evidence of Defendant's guilt in the form of a confession and video of Defendant using a stolen credit card taken from a nearby vehicle before the shotgun itself played any role at all.