**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 08-5079**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JASON YOUNG,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.   Liam O'Grady, District Judge.  (1:08-cr-00240-LO-6)

_____

Submitted:  January 7, 2010          Decided:  March 22, 2010

_____

**No. 08-5111**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

FARES ABULABAN, a/k/a Sameh,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:08-cr-00101-JCC-1; 1:08-cr-00240-LO-1)

---

Argued: January 27, 2010                    Decided: March 22, 2010

---

Before TRAXLER, Chief Judge, AGEE, Circuit Judge, and Catherine C. BLAKE, United States District Judge for the District of Maryland, sitting by designation.

---

Affirmed by unpublished opinion. Judge Blake wrote the opinion, in which Chief Judge Traxler and Judge Agee joined.

---

**ARGUED:** Marvin David Miller, Alexandria, Virginia, for Appellant Fares Abulaban. David Brian Goodhand, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio; Heather Golias, LAW OFFICE OF MARVIN D. MILLER, Alexandria, Virginia, for Appellants. Dana Boente, United States Attorney, Lawrence J. Leiser, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

BLAKE, District Judge:

Fares Abulaban and Jason Young pled guilty to drug conspiracy and related gun charges and were sentenced to total terms of imprisonment of 232 months for Abulaban and 270 months for Young. Both appeal aspects of their sentencing; Abulaban also appeals the denial of his motion to suppress a firearm seized during a warrantless search of the automobile in which he drove to the site of the supposed cocaine transaction. In fact it was a "reverse sting" operation. For the reasons that follow, we affirm the rulings of the district court.

I.

A.

In February 2008, agents of the Immigration and Customs Enforcement ("ICE") Division of the Department of Homeland Security planned a "reverse sting" operation in which ICE undercover agent Tony Rodriguez played the role of a drug dealer with cocaine connections in Columbia. Defendant Abulaban agreed to find purchasers for 20 kilograms of cocaine which Agent Rodriguez was to have available for sale on February 15, 2008 in Morgantown, West Virginia. Defendant Young was to be one of the buyers.

Several meetings took place among Abulaban, Rodriguez, and other co-conspirators or undercover agents prior to February 15,

3

2008. On February 7, 2008, Abulaban met with Rodriguez and others to discuss arrangements for buyers to purchase the 20 kilograms of cocaine. It was agreed that Abulaban would receive some fee or percentage of the purchase price for his work, and there was discussion about using vehicles, including his, to pick up money or drugs. Abulaban left that meeting in a silver BMW he had apparently recently purchased ("the BMW"). On February 14, 2008, Abulaban met with Agent Rodriguez and others again, driving them in his BMW to Club Envy, the site of the next day's planned transaction, where he gave the agents a tour of the Club including its entrances and exits before driving the agents back to the lot where their car was parked.

On February 15, 2008, Abulaban initially picked up the agents in a different car to drive around and discuss the deal, including Abulaban's intention to take two of the kilos himself to sell. In the course of the discussion, Abulaban asked Agent Rodriguez if he had his gun with him or had a gun. After parking in front of the Morgantown Hotel, Abulaban entered the hotel and later exited carrying a paper bag, which he handed to Agent Rodriguez. The bag contained approximately $40,000 in banded cash. Abulaban then drove the agents, with the money, to Club Envy in his silver BMW. Other conspirators arrived, also with money, and eventually another undercover agent brought the purported 20 kilograms of cocaine to the Club. Once the "drugs"

4

were placed in view, the conspirators were arrested. Abulaban and defendant Jason Young, one of the buyers, were among those arrested. While Abulaban did not have a gun on his person, weapons were recovered from other persons arrested at the Club. Following the arrests, agents searched Abulaban's BMW and found a loaded .380 caliber semi-automatic handgun in the driver's side map compartment.

B.

On March 13, 2008, a federal grand jury in Alexandria, Virginia, returned an indictment (08-CR-101) charging Abulaban, Young, and others with conspiracy to distribute and possess with intent to distribute both cocaine and ecstasy in violation of 21 U.S.C. §§ 841(a)(1) and 846. A single-count superseding indictment returned June 19, 2008, narrowed the scope of the conspiracy and did not name Young. A separate indictment returned June 12, 2008 (08-CR-240), charged Abulaban, Young, and others with conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 860 (Count One); charged Abulaban with possessing a firearm (the .380 caliber semi-automatic found in his BMW) on February 15, 2008 in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count Two); and charged Young with using and carrying a firearm (a .38 caliber Taurus revolver) on February 15, 2008 during and in

5

relation to a drug trafficking offense, also in violation of 18 U.S.C. § 924(c) (Count Three).

Prior to trial Abulaban moved to suppress the handgun seized from his BMW, claiming that the warrantless search violated the Fourth Amendment. After an evidentiary hearing, the district court found the search lawful, concluding that "the officers had probable cause to search the BMW, as it was an instrumentality of the drug conspiracy and thereby falls within the vehicle exception to the warrant requirement." J.A. 300. Secondarily, the court concluded that the officers had probable cause to believe the BMW was subject to forfeiture and that it could be seized without a warrant. Accordingly, the motion to suppress was denied.[1]

On July 12, 2008, Abulaban pled guilty to Counts One and Two of the indictment in 08-CR-240 arising from the February 15, 2008 transaction (conspiracy to possess with intent to distribute cocaine and possession of a firearm in furtherance of a drug-trafficking offense); Young pled guilty to Counts One and Three of the same indictment (the cocaine conspiracy and using and carrying a firearm). Neither had a written plea agreement,

---

[1] This ruling was made by Judge James C. Cacheris in connection with the 08-CR-101 indictment. The § 924(c) charge involving the handgun later became part of the 08-CR-240 indictment, assigned to Judge Liam O'Grady. Judge O'Grady adopted Judge Cacheris's ruling. J.A. 353.

6

although Abulaban and the government agreed he had reserved the right to appeal the denial of his suppression motion. Abulaban also pled guilty, with a written agreement, to Count One of the superseding indictment in 08-CR-101, which charged a conspiracy to possess with intent to distribute ecstasy based on a meeting with co-conspirator Mohammed Alazzam and an undercover agent in March 2007 to plan the acquisition and sale to the agent of 2500 ecstasy pills at a price of $10 per tablet. Abulaban was to be paid as a broker for this sale, but it was never carried out. On October 10, 2008, the district court sentenced Young to 210 months' incarceration on Count One and 60 months consecutive on Count Three. On October 30, 2008, the court sentenced Abulaban to 172 months' incarceration on Count One of both 08-CR-101 and 08-CR-240, to run concurrently, and 60 months consecutive on Count Two of 08-CR-240. This appeal followed.[2]

II.

A.

We first consider whether the district court erred in denying Abulaban's motion to suppress the gun found in his BMW.

---

[2] Both Abulaban and Young filed notices of appeal and briefed their respective issues. Their appeals were consolidated. Prior to oral argument, however, because of a change in counsel for Young, the appeals were deconsolidated. Young's claims will be resolved on the briefs.

7

We review the court's findings of fact for clear error and its conclusions of law de novo. United States v. Kelly, 592 F.3d 586, 589 (4th Cir. 2010).

Abulaban argues that for the automobile exception to apply the vehicle must be "readily mobile" and there must be "probable cause to believe it contains contraband," citing Maryland v. Dyson, 527 U.S. 465, 467 (1999). This is of course consistent with precedent. To the extent he suggests, however, that the car was no longer "mobile" because the agents had seized the keys and arrested Abulaban, and therefore the automobile exception no longer applied, this suggestion has been rejected, for reasons thoroughly and recently explained in Kelly, 592 F.3d at 591. The inherent mobility of the car, combined with the lesser expectation of privacy in an automobile as compared to a home or office, justify application of the exception even if the police have control over the automobile at the time of the warrantless search. Id. at 590-91; see also United States v. Brookins, 345 F.3d 231, 237-38 (4th Cir. 2003).

Abulaban also argues that the agents lacked probable cause to believe the BMW contained contraband, relying on testimony from agents that they were not aware of any contraband in the BMW after the bag of money was removed, and that they had not seen Abulaban with a pistol. There was ample evidence to conclude, however, that Abulaban planned to receive a fee from

8

the transaction and to take a portion of the drugs; it is simple logic to find, as the district court did, that Abulaban intended to use the BMW to transport his share of the money and the cocaine away from Club Envy. Nor is there any dispute that he had used the car to transport drug purchase money to the Club. As the district court concluded, this case falls well within the parameters set forth in United States v. Dickey-Bey, 393 F.3d 449, 457 (4th Cir. 2004), permitting the search of the car as an instrumentality of the crime. In addition, as the government argues, examining the facts from the standpoint of an objectively reasonable police officer, there was probable cause to believe Abulaban was concealing a gun in the BMW and perhaps other evidence of the conspiracy. His question about whether the agent had a gun, combined with the value of the purported drugs and the fact that other co-conspirators had weapons, supported a fair probability that Abulaban, who had no weapon on his person, had concealed a weapon in his BMW. See Brookins, 345 F.3d at 235 (internal citation omitted). Further, the BMW admittedly had been used to transport both participants and money before the transaction at the Club. Thus, to the extent the question is distinct from whether the BMW was an "instrumentality" of the drug conspiracy, we conclude the search was also justified by probable cause to believe the BMW

9

contained evidence of the crime or contraband, including a weapon.[3]

### B.

We now turn to Abulaban's challenge to his within Guidelines sentence. As recently explained, now that the Guidelines are effectively advisory, district courts must first correctly calculate the defendant's Guidelines range and then "allow the parties to argue for what they believe to be an appropriate sentence and consider those arguments in light of the factors set forth in 18 U.S.C.A. § 3553(a)." United States v. Engle, 592 F.3d 495, 500 (4th Cir. 2010). The district court must explain its reasons for the sentence it imposes; the appellate court then reviews that sentence for reasonableness, including both a procedural and a substantive component. First, the appellate court must ensure that the district court

> committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range.

---

[3] In light of this conclusion, we need not reach the applicability of the forfeiture statute as a basis to seize the BMW.

Id., quoting <u>Gall v. United States</u>, 552 U.S. 38, 51 (2007). The second step considers the substantive reasonableness of the sentence, taking into account the totality of the circumstances and applying an abuse of discretion standard. <u>Id.</u> The appellate court, though not the district court, may accord a presumption of reasonableness to a sentence that falls within a properly calculated Guidelines range. <u>United States v. Smith</u>, 566 F.3d 410, 414 (4th Cir. 2009); <u>United States v. Brewer</u>, 520 F.3d 367, 372 (4th Cir. 2008).

Abulaban essentially raises a procedural challenge, alleging the Guidelines were not correctly calculated because, in his view, the court sentenced him on the basis of unrelated conspiracies in North and South Carolina and on the basis of an additional 1000-pill ecstasy sale in New York. He characterizes this (1) as a violation of Fed. R. Crim. P. 32(i)(3)(B) based on his objection to the fact that the presentence report ("PSR") included the names of other alleged coconspirators and (2) as a Fifth and Sixth Amendment violation on the theory that he was sentenced for offenses to which he did not plead guilty and in which he was not involved.[4]

---

[4] Abulaban's argument that he had not waived his right to appeal the sentence was mooted by the government's response that it did not seek to enforce any such waiver.

11

Regardless of the underlying theory, a fair reading of the sentencing transcript makes it clear that Abulaban was sentenced only on the two drug conspiracies to which he pled guilty, and on the related firearms charge. The conspiracy in 08-CR-240 involved 20 kilograms; Abulaban brokered the entire deal. The ecstasy conspiracy in 08-CR-101 involved a planned distribution of 2,500 tablets in March or April 2007 in Virginia. Abulaban admitted to both these conspiracies on July 15, 2008 before Judge O'Grady. J.A. 363-65, 368-71, 391-93. On October 30, 2008, he was sentenced by Judge O'Grady, who added a 4-level role enhancement to the PSR's 34 levels, which was based on 20 kilograms of cocaine and 1,015 tablets of ecstasy. J.A. 496.[5] The judge declined to find obstruction of justice, deducted three levels for acceptance of responsibility, and noted an advisory Guidelines range of 168 to 210 months at level 35 Criminal History Category I. J.A. 486-87, 496. In listening to arguments about the appropriate sentence, Judge O'Grady said "I am going to sentence him based on what he did in two different drug conspiracies and the possession of a firearm." J.A. 503. He later referred to Abulaban putting together the 20-kilogram deal and being the leader of the drug organization for the deal

---

[5] If anything, therefore, the quantity of ecstasy was understated.

at Club Envy. J.A. 515. While he misspoke by referring to methamphetamine as one of the "multiple" conspiracies, he quickly accepted counsel's correction. J.A. 516. Considering the seriousness of the offense, the need for deterrence and punishment, as well as Abulaban's age, medical condition, and limited criminal record, he imposed a sentence close to the bottom of the Guidelines range. To suggest that Judge O'Grady relied on criminal conduct for which Abulaban's guilt was not firmly established borders on the frivolous. The sentence was reasonable and did not violate any provision of the Constitution.

### C.

Defendant Young also challenges his sentence in several respects: first, the court's attribution of the entire 20 kilograms to him for purposes of sentencing; second, the four-level enhancement for use of body armor; third, the alleged reliance of the court on evidence from a proceeding where Young was not present; and fourth, that the 270-month term of incarceration was substantively unreasonable. These will be addressed in turn.

First, the record before the trial court amply supports a finding that the full 20 kilograms of cocaine not only were foreseeable to Young but also were within the scope of his particular agreement. Young knew that he was part of "a big, 20

13

kilogram, cocaine deal." J.A. 576. As the PSR noted, there was evidence that when it appeared the purchasers would fall short, Young agreed to take his initial five kilos and quickly sell enough to return to Club Envy later that evening to buy two more kilos. J.A. 549, 574.[6] While the PSR attributed only seven kilograms to Young, the government contended that Young should be accountable for all 20 kilos. Reviewing the facts that showed Young's knowledge of and participation in a specific 20-kilogram transaction, the trial court correctly concluded that the entire 20 kilograms was reasonably foreseeable to Young "within the scope of the criminal activity that he jointly undertook." J.A. 466-67. See U.S.S.G. § 1B1.3(a)(1)(A) & (B) and app. Note 2.

Second and third, the district judge correctly enhanced Young's sentence for use of body armor based primarily on Young's own admission to law enforcement agents that he had a gun and body armor that night, although he took off the body armor when he ran to the back of the Club. J.A. 460-61, 467. Reference to trial evidence as consistent with Young's own statements did not undercut the independent basis for the

_____

[6] Young admitted he had been asked to take more than his five kilos, but denied agreeing to do so. J.A. 577.

14

court's finding at sentencing nor did it violate Young's due process rights.

Finally, Young has not persuaded us that the sentence, at the low end of the advisory Guidelines range, was substantively unreasonable. The district judge emphasized the seriousness of the offense, as reflected by the quantity of cocaine and the possession of both a weapon and body armor,[7] but he also considered Young's individual history, as noted by the court's downward departure from Criminal History Category III to Category II when calculating the Guidelines. Considering the totality of the circumstances, we cannot say that the district judge abused his substantial discretion in sentencing Young to the low end of the Guidelines on the cocaine conspiracy, followed by the mandatory minimum consecutive 60 months on the firearms charge.

## III.

Accordingly, for the reasons explained above, the suppression ruling and the Judgment and Commitment orders entered by the district court as to Fares Abulaban and Jason Young are

AFFIRMED.

---

[7] Possession of body armor also contributed to Young's sentence being longer than other co-conspirators.

15