# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 21, 2016

## STATE OF TENNESSEE v. ROBERT G. THORNTON, JR.

**Appeal from the Circuit Court for Hickman County**
**No. 145023CR      James G. Martin, III, Judge**

_____

**No. M2015-01555-CCA-R3-CD – Filed January 10, 2017**

_____

The Defendant entered a plea of nolo contendere to eleven counts of sexual exploitation of a minor, a Class D felony, with an agreed-upon sentence of two years for each count, all to be served concurrently. The Defendant reserved a certified question of law challenging the search of his vehicle and its contents, including a laptop computer which was the source of the images which serve as the basis of the convictions. After a thorough review of the record, we conclude that there was probable cause to search the Defendant's vehicle, and we accordingly affirm the convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which TIMOTHY L. EASTER, J., joined. NORMA MCGEE OGLE, J., filed a separate dissenting opinion.

Richard Boehms, Hohenwald, Tennessee, for the appellant, Robert G. Thornton, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Kim R. Helper, District Attorney General; and Kate Yeager Delk, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

The Defendant came to the attention of the authorities when he began sending text messages to an eleven-year-old boy,[1] attempting to arrange a meeting at night. The Defendant was apprehended near the prearranged meeting spot, and his telephone was seized as a search incident to his arrest. Law enforcement then discovered his vehicle parked nearby at his sister's home, and they took it into custody, securing a laptop computer in the process. The computer was searched subject to a warrant obtained eleven days after the arrest, and the images which form the basis for the convictions on appeal in this case were found as part of the search of the computer. The Defendant was also charged with offenses based on images recovered from his cellular telephone, with a solicitation offense involving the minor to whom he sent text messages, and with offenses charging that he engaged in sexual contact with two other minor victims.

The Defendant moved to suppress "any evidence obtained from the seizure of the Defendant's vehicle and cellular phone following his arrest." At the suppression hearing,[2] Detective Brad Garland testified that he was a patrol supervisor on April 17, 2013, and that he was approached by the father of the minor solicitation victim. The minor's father stated that his son had been receiving text messages from an adult who identified himself as "Bobby," and the minor's father felt the messages were inappropriate. "Bobby" was later determined to be the Defendant. Detective Garland received information that the minor had first had contact with the Defendant at a skating rink, and the minor's father told Detective Garland where the Defendant lived and described the Defendant's car. The minor's father gave police consent to search the telephone on which his son received the messages, and Detective Garland took the telephone into evidence pending an investigation. Detective Garland acknowledged that his first report stated that, based on his review of the telephone, there were no messages requesting any sexual acts. However, the report also indicated that the minor received a message that stated, "Ok I dont mind givin you a condom but I just dont trust alot of people when it comes to condoms and sexual items." Other messages were repeated queries apparently regarding the victim's ability to meet the sender. Detective Garland explained that his report referred to "Brian" and not "Bobby" because they were calling

---

[1] It is the policy of this Court not to identify minors by name. The minor with whom the defendant was communicating is the victim of a separate count charging solicitation of a minor, and that charge is not at issue in this appeal.

[2] The suppression hearing was presided over by a different judge from the one who accepted the plea and the reserved certified question.

the sender of the messages "Brian" at the time. He could not recall if the source of the moniker "Brian" was the victim's father or the telephone.

Detective Garland was absent from the station, pursuing unrelated matters, for a period of time after the minor's father had given him the telephone, and when he returned, he saw that the minor's telephone, which he had taken into evidence, had received several new messages asking the minor to meet the sender near the minor's home.

Detective Garland consulted with other officers, including Detective Levy Mobley, and they began to send messages to "Bobby" from the minor victim's telephone. Detective Mobley went to the minor's house for protection around 11:00 p.m. The Defendant initially arranged to meet the minor near a church, but the locale was changed after the Defendant saw two police vehicles. Law enforcement had set up surveillance near the site of the meeting, and Officer Cody Woods, "a smaller guy," was waiting on the railroad tracks where the meeting was to occur. Detective Garland testified that at one point, the Defendant seemed unsure about meeting, and he asked to speak to the minor. Law enforcement arranged with the minor's parents for the minor to have telephone contact with "Bobby" so that "Bobby" would believe he was meeting a young boy.

At the time of the meeting, law enforcement observed some late-night traffic consisting of cars driving by, but no other foot traffic in the area. Detective Mobley, who was at the minor's house, observed the Defendant walking down the railroad tracks, which were about one hundred yards from the minor's house, and Detective Mobley alerted the other officers. Detective Garland ordered the Defendant to stop, and the Defendant fled. The Defendant was tackled on the railroad tracks and, after a struggle, handcuffed by Detective Garland and Officer Danny Roberts. The Defendant was in possession of a telephone and a condom. The telephone was the same one that had been in communication with the minor's telephone. The arrest occurred either in the late hours of April 17, 2013, or the early hours of April 18, 2013.

After he was taken into custody, the Defendant revealed to law enforcement that he had driven to the location of the prearranged meeting, but he would not tell where he had parked his vehicle. Deputy David Epley and Officer Cody Woods found a vehicle matching the description of the Defendant's vehicle in the front yard of a private residence. Deputy Epley testified that the car had a Tennessee license plate affixed over an Alabama license plate. A bag for a laptop computer was in the backseat. Deputy Epley testified that there was a small ditch by the road, and that it appeared that the vehicle had turned onto the driveway, passed the ditch, and then turned directly into the yard. Officer Woods requested a tow truck for the vehicle and conducted an inventory of

its contents, including the laptop computer. According to Officer Woods, the vehicle was seized because it was used in a crime.

Officer Roberts testified that the vehicle was approximately one-quarter mile from the arrest site and that it was in the yard, beside the driveway, and next to the road. The car was located "at [the Defendant's] sister's house at the end of the driveway next to Highway 48." Officer Roberts elaborated that the car was approximately fifty feet from the road and that it was not obstructing traffic. The laptop was lying in the backseat, and Officer Roberts could not recall if the laptop itself was visible from the road.

Detective Mobley joined the officers who were conducting an inventory of the vehicle's contents. He testified that he could see the laptop in the backseat of the car. The car was two to three hundred yards from the victim's house and approximately two hundred yards from the arrest site. Detective Mobley testified that the car was in the driveway or the yard of the Defendant's sister's home.

Dana Lewis, the Defendant's sister, testified that the Defendant arrived at her house that night and told her he would sit in his car because "it was nice and cool and he likes to listen to the crickets and stuff." Ms. Lewis fell asleep around 12:00 or 12:30 a.m. At approximately 1:13 a.m., she went to investigate why her dogs were barking. Eight police officers approached her, asking "Is he in there, is he in there?" Approximately ten minutes later, the sheriff told her, "I don't know why they told you that because we already have him in custody." Ms. Lewis testified that the Defendant's vehicle was parked half an acre away from the road, in the grass. The police then looked through the contents of the car, and she believed that one of them got into the vehicle to drive it to the road because the tow truck driver did not want to come onto the property.

Detective Mobley obtained a search warrant for the computer and telephone on April 29, 2013, after he had conducted numerous interviews while investigating the Defendant. The warrant was introduced into evidence. However, the affidavit accompanying the warrant is not a part of the appellate record.

The trial court denied the motion to suppress. The trial court found that police had probable cause to arrest the Defendant based on the messages he had exchanged with an eleven-year-old boy and based on his presence at the rendezvous point. The trial court then found that the seizure and administrative inventory of the vehicle were proper for two independent reasons. First, the trial court found that

> the same facts establishing the probable cause that existed to justify the [D]efendant's arrest are also sufficient to establish probable cause to believe that the vehicle contained evidence which was subject to seizure.

-4-

The car was in operable condition and was located on property belonging to the [D]efendant's sister. Because the car contained evidence, was readily mobile and located on property belonging to [the D]efendant's sister, impounding the car for safekeeping was reasonable. Moreover, the [D]efendant, during a voluntary custodial interrogation[,] was evasive about the car and did not provide law enforcement with any reasonable alternative to impounding the vehicle.

The trial court concluded that an independent justification of the seizure of the vehicle was that "the vehicle was an instrumentality of the offense and was subject to being seized for this reason as well." The trial court noted that the vehicle was used to commit the offense and that leaving it on the property of the Defendant's sister presented a risk to any potential evidence in the vehicle.

The trial court found that an inventory of the car was conducted, that it "was reasonably necessary to impound the vehicle," and that the need for the inventory outweighed any privacy interests. The trial court further found that the laptop computer was in plain view and that the police had a "reasonable belief that the laptop contained evidence of a crime."

Regarding the search of the contents of the computer and telephone,[3] the trial court found that the search pursuant to the warrant was valid. The trial court found that "[t]he search warrant was based upon an affidavit that reliably stated facts sufficient to support probable cause to believe that evidence of a crime was likely to be found in the electronic memory, files and contents of the laptop and phones." The trial court, at the hearing, also made an oral finding that "the affidavit supplied to the General Sessions Judge is adequate and does provide probable cause for [the] magistrate to issue a warrant."

The Defendant was charged in a twenty-one count indictment which included the offense of solicitation of a minor against the victim who received the text messages; one count of sexual battery and one count of exploitation of a minor by electronic means against a second victim; two counts of rape against a third victim; five counts of sexual exploitation of a minor for images recovered from the cellular telephone; and the eleven counts of sexual exploitation of a minor based on the computer images. The Defendant's offenses were severed, with the two rape charges to be tried together; charges alleging sexual battery and exploitation of a minor by electronic means to be tried together; the solicitation offense against the minor victim who received the text messages to be tried alone; and the charges stemming from images on the cellular telephone to be tried

_____

[3] There was some confusion, raised during the suppression hearing and not germane to this opinion, regarding whether a second telephone was recovered and where it was found.

together.  The eleven counts that are the subject of the instant appeal, which stem from the images discovered on the computer, were also severed from the other charges.  A jury found the Defendant guilty of the rape charges.

After his rape convictions, the Defendant pled nolo contendere to eleven counts of sexual exploitation of a minor related to the images on the computer.  The Defendant reserved the following certified questions of law:

> (1) Was there probable cause to believe that the Defendant's vehicle contained evidence which was subject to seizure; (2) was the defendant's vehicle an instrumentality of the offense of which he was arrested; (3) did law enforcement have grounds to impound the vehicle and subsequently perform an administrative inventory of said vehicle; (4) did law enforcement have reasonable belief that the laptop contained evidence of a crime thus invoking the plain view doctrine[;] and (5) was the search warrant allowing law enforcement to search the contents of the laptop a valid warrant?

The trial court, the Defendant, and the prosecution consented to the preservation of the questions and agreed that the questions were dispositive of the charges.

## ANALYSIS

The Defendant argues that the search and seizure of his laptop computer was illegal.  He first challenges the seizure of the vehicle parked in his sister's yard, the contents of which included the laptop.  He also contends that the search warrant for the electronic contents of the laptop was in violation of the protections against unreasonable searches and seizures.  The State counters that there was probable cause to seize the vehicle.

Under Tennessee Rule of Criminal Procedure 37(b)(2)(A), a defendant may appeal from a plea of guilty or nolo contendere if the defendant "explicitly reserved – with the consent of the state and of the court – the right to appeal a certified question of law that is dispositive of the case" and the requirements of the Rule are otherwise met.  A certified question is dispositive when the appellate court is faced with the choice of affirming the judgment of conviction or reversing the conviction and dismissing the charges.  *State v. Dailey*, 235 S.W.3d 131, 134 (Tenn. 2007).  The appellate court is not bound by the determination of the trial court that a question is dispositive but must make an independent determination.  *Id.* at 134-35.  Here, the charges are entirely based on the information discovered on the laptop, and the Defendant has properly framed the

alternative grounds the trial court relied on in concluding that the search and seizure of the laptop was proper. We conclude that the question is properly certified.

The certified question addresses the trial court's ruling on the motion to suppress. A trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Binette,* 33 S.W.3d 215, 217 (Tenn. 2000). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom,* 928 S.W.2d 18, 23 (Tenn. 1996). "The prevailing party in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Day*, 263 S.W.3d 891, 900 (Tenn. 2008). The trial court's application of the law to the facts is reviewed de novo with no presumption of correctness. *State v. Kenneth McCormick*, __ S.W.3d __, No. M2013-02189-SC-R11-CD, 2016 WL 2742841, at *3 (Tenn. May 10, 2016). The existence of probable cause is a mixed question of fact and law reviewed de novo. *State v. Bell*, 429 S.W.3d 524, 529 (Tenn. 2014).

## I. Seizure of the Vehicle

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution guarantee the right to be free from unreasonable searches and seizures. A warrantless search is presumed unreasonable. *State v. Cox,* 171 S.W.3d 174, 179 (Tenn. 2005). Evidence discovered as the result of a warrantless search is subject to suppression unless the State demonstrates by a preponderance of the evidence that the search was conducted pursuant to an exception to the warrant requirement. *State v. Simpson,* 968 S.W.2d 776, 780 (Tenn. 1998).

It has long been held that when the search pertains to an automobile, the existence of probable cause coupled with an automobile's mobility creates "a valid exception to the warrant requirement of the Fourth Amendment." *Hawkins v. State*, 543 S.W.2d 606, 610 (Tenn. Crim. App. 1976). Accordingly, "the exigencies attendant to ready mobility justify searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met." *State v. Leveye*, 796 S.W.2d 948, 952 (Tenn. 1990) (quoting *California v. Carney,* 471 U.S. 386, 392 (1985)). No separate finding of exigency is required. *State v. Saine,* 297 S.W.3d 199, 207 (Tenn. 2009); *see also Maryland v. Dyson,* 527 U.S. 465, 466-67 (1999). Instead, "[t]he 'automobile exception' to the warrant requirement permits an officer to search an automobile if the officer has probable cause to believe that the automobile contains contraband." *Saine*, 297 S.W.3d at 207. The justification for the "automobile exception" to the warrant requirement depends on a reduced expectation of privacy in an automobile and the

inherent mobility of an automobile. *Leveye*, 796 S.W.2d at 952 (citing *Carney,* 471 U.S. at 392). "If the officer has probable cause to believe that the automobile contains contraband, the officer may either seize the automobile and then obtain a warrant or search the automobile immediately." *Saine*, 297 S.W.3d at 207.

We note here that the fact that the Defendant's vehicle was parked at a private residence is not determinative in analyzing whether the "automobile exception" applies. In *State v. John Burley Alberts*, the defendant argued that because he was under arrest and his car was parked at a private residence, law enforcement did not have the authority to seize the vehicle containing a computer and camera because it was not "readily mobile." This court rejected that argument. No. M2015-00248-CCA-R3-CD, 2016 WL 349913, at *5-6 (Tenn. Crim. App. Jan. 28, 2016), *perm. app. denied* (June 23, 2016); *see also United States v. Brookins*, 345 F.3d 231, 237-38 (4th Cir. 2003) (concluding that there was probable cause to search a vehicle when police had reasonable belief that drugs were present in the vehicle, despite the fact that the defendant was arrested outside the vehicle and that the defendant's wife had driven the vehicle to a private residence and parked it there); *State v. Jose Roberto Ortiz*, No. M1998-00483-CCA-R3-CD, 1999 WL 1295988, at *15 (Tenn. Crim. App. Dec. 30, 1999) ("'It is the characteristic mobility of all automobiles, not the relative mobility of a car in a given case, that gives rise to the ... standard … which allows for warrantless searches when probable cause exists.'" (quoting *United States v. Perry,* 925 F.2d 1077, 1081 n.4 (8th Cir. 1991))).

### A. Probable Cause to Believe that the Vehicle Contained or Constituted Evidence

The Supreme Court has expressly held that the "automobile exception" is applicable "'[i]f a car is readily mobile and probable cause exists to believe it contains contraband.'" *Dyson,* 527 U.S. at 467 (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996)). "Without probable cause, neither the 'automobile exception' nor a forfeiture provision is available to support a warrantless search or seizure." *Brookins*, 345 F.3d at 235. Accordingly, we must determine if probable cause existed to seize the Defendant's vehicle.

Probable cause is a "fair probability that contraband or evidence of a crime will be found." *State v. Yeargan,* 958 S.W.2d 626, 632 (Tenn. 1997) (quoting *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). "Probable cause has been defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." *State v. Henning,* 975 S.W.2d 290, 294 (Tenn. 1998). It is more than mere suspicion, but it need not be absolute certainty. *State v. Bell*, 429 S.W.3d 524, 530 (Tenn. 2014). Probable cause is based on facts and circumstances and reliable information sufficient to warrant a prudent person in believing that evidence or contraband will be found. *State v. Richards*, 286 S.W.3d 873, 879 & n.4 (Tenn. 2009).

"'In dealing with probable cause, ... we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Day*, 263 S.W.3d at 902 (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).  Probable cause is "a 'fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules.'" *Richards*, 286 S.W.3d at 884 (Koch, J., dissenting) (quoting *Illinois v. Gates,* 462 U.S. 213, 232 (1983)).  A probable cause determination depends on the totality of the circumstances.  *Id.*  In determining the existence of probable cause, courts should consider the nature of the property sought, the normal inferences as to where a criminal would hide the evidence, and the perpetrator's opportunity to dispose of incriminating evidence, as well as whether the criminal conduct is an isolated instance or a protracted pattern of conduct.  *State v. Reid*, 91 S.W.3d 247, 275 (Tenn. 2002).  In other words, "[t]he nexus between the place to be searched and the items to be seized may be established by the type of crime, the nature of the items, and the normal inferences where a criminal would hide the evidence."  *State v. Smith*, 868 S.W.2d 561, 572 (Tenn. 1993).

The scope of a warrantless search is confined by the probable cause determination. *John Burley Alberts*, 2016 WL 349913, at *7 (citing *United States v. Ross,* 456 U.S. 798, 823 (1982)).  Probable cause to search a vehicle extends to all parts of the vehicle and any articles or containers in which the objects of the search may be concealed, but no farther.  *State v. Andre Anthony*, No. W2002-01377-CCA-R3-CD, 2003 WL 23100339, at *11 (Tenn. Crim. App. Dec. 30, 2003).

Accordingly, courts have found probable cause for a warrantless vehicle search when law enforcement had reasonably trustworthy information which would warrant a prudent person believing that evidence of criminal activity would be found in the vehicle. *See State v. Carrie Lynn Ronewicz*, No. W2011-01332-CCA-R3-CD, 2012 WL 6719646, at *20 (Tenn. Crim. App. Dec. 26, 2012) (concluding that victim's identification of stolen items in van gave probable cause to search the van); *State v. Jason Paul Sherwood*, No. M2005-01883-CCA-R3-CD, 2007 WL 189376, at *9 (Tenn. Crim. App. Jan. 26, 2007) (concluding there was probable cause to search a van when police knew that a shooting had occurred two hours earlier at a salvage yard and a suspect had driven off in a white van, and when the defendant and van matched the description of the suspect, the defendant was present an area that the suspect was thought to live, and there was an engine visible in the van's interior); *State v. Leslie Darrell Debord*, No. E2001-02808-CCA-R3-CD, 2003 WL 21476507, at *5-6 (Tenn. Crim. App. June 26, 2003) (upholding probable cause to seize truck when police found a stolen ATV in a secluded area next to a truck which was still warm and contained machinery in the back); *Andre Anthony*, 2003 WL 23100339, at *11 (concluding that when the defendant was apprehended while trying to use a stolen credit card, had no identification other than the victim's, and was parked

nearby in a public parking lot, there was probable cause to believe that the vehicle contained other property reported stolen and belonging to the victim); *Tony A. Makoka v. State*, No. 01C01-9603-CC-00124, 1997 WL 469528, at *3 (Tenn. Crim. App. Aug. 15, 1997) (determining probable cause existed to search a vehicle when a shooting had just taken place, police saw the petitioner standing in the area with or near a gun, and ammunition could be seen in the vehicle); *State v. Ronald Edward Parrish*, No. 01C01-9309-CC-00292, 1995 WL 678810, at *3 (Tenn. Crim. App. Nov. 16, 1995) (holding there was probable cause to search a vehicle because the nature of the call-in prostitution business made it likely that the vehicle used to drop off prostitutes would contain business records).

However, probable cause is lacking when the facts known to law enforcement fail to establish a nexus between the vehicle and evidence of criminal activity. *See State v. Jerry T. Dixon*, No. 01-C-01-9205-CC-00176, 1993 WL 17097, at *2-3 (Tenn. Crim. App. Jan. 28, 1993) (concluding that there was an insufficient nexus when police observed individuals walk to a pickup truck and return to a van parked thirty feet away, and police observed a marijuana cigarette being smoked in the van, but there was no indication that the drugs were transferred to the van from the truck); *Nolan v. State*, 588 S.W.2d 777, 780-81 (Tenn. Crim. App. 1979) *overruled on other grounds as recognized in Carrie Lynn Ronewicz*, 2012 WL 6719646, at *17 n.1 (concluding that there was no probable cause to search a vehicle parked in hotel parking lot based on the discovery in a hotel room of a television which appeared to have been stolen because the car was "some distance removed and unconnected with the location of the television").

The State appears to concede that the trial court's reliance on the vehicle being an instrumentality of the offense would not justify a seizure of the vehicle. We note that a vehicle which is the evidence or instrumentality of a crime is subject to seizure. 3 Wayne R. LaFave, *Search and Seizure* § 7.3(a) (5th ed.) ("[I]f there is probable cause [to believe that] the vehicle is evidence of crime …, then it is certainly arguable that it should be just as subject to warrantless seizure and search as a vehicle merely thought to contain evidence."); *see*, *e.g.*, *Capraro v. Bunt*, 44 F.3d 690, 691 (8th Cir. 1995) (vehicle used to accomplish a kidnapping was an instrumentality of the crime). Accordingly, when there is probable cause to believe that the vehicle itself has evidentiary value, it may properly be seized. *State v. Arthur B. Harbin, Jr.*, C.C.A. No. 60, 1990 WL 126729, at *1 (Tenn. Crim. App. Sept. 5, 1990) (upholding seizure of vehicle and examination of brakes when the vehicle had struck and killed a child); *see also State v. Donald Curtis Reid*, No. M1999-00058-CCA-R3-CD, 2000 WL 502678, at *7 (Tenn. Crim. App. Apr. 28, 2000) (upholding seizure of the vehicle used to flee a robbery as an instrumentality of the crime because a witness had taken a photograph of the "rather unique" vehicle and the vehicle itself therefore had potential evidentiary value regarding the identity of the perpetrators, and also upholding search as incident to arrest); *United States v. Sanchez*, 612 F.3d 1, 5-6

(1st Cir. 2010) (upholding seizure of motorcycles with false license plates as evidence of the licensing infractions). Here, there was no indication that the vehicle itself had evidentiary value in relation to the solicitation crime or was used to commit the crime, and accordingly, its seizure cannot be justified under the theory that it was an instrumentality of the offense.

The State argues that there was probable cause to believe that the vehicle contained evidence. The Defendant was arrested for solicitation of a minor and resisting arrest. The Defendant had exchanged text messages with the minor, and he wrote the minor, "Ok I dont mind givin you a condom but I just dont trust alot of people when it comes to condoms and sexual items." The Defendant arranged a late-night meeting with the minor, and he changed the meeting spot based on his observation of police activity in the area. He also insisted on speaking with the minor through the telephone to confirm that he would be meeting a child. He left his vehicle at his sister's home, where it was unlikely to be discovered, and the trial court found that he was later "evasive" about its location. The Defendant was charged with solicitation of a minor for the criminal acts he committed that evening. The telephone that the Defendant used to communicate with the minor and a condom were recovered from the Defendant's person; accordingly, law enforcement could not have expected to find them within the vehicle. Nevertheless, the State argues that there was a "fair probability" that the vehicle contained additional evidence of the crime, referencing the text message regarding "sexual items."

We note initially that there was no nexus between the laptop computer and the crime for which the Defendant was then under investigation — solicitation of the minor victim. That crime had been accomplished with a telephone, and there is no indication that law enforcement had reason to suspect that any additional evidence would be found on the Defendant's computer. *Compare John Burley Alberts*, 2016 WL 349913, at *7 (concluding that there was probable cause for a warrantless search of the vehicle when police had found pornographic images of children on the defendant's work computer, including images of a local victim, and knew from interviews that the defendant kept a laptop and a digital camera which he used to photograph children in his car). Accordingly, the laptop's incriminating nature was not immediately apparent in this case, and the plain view doctrine does not apply. *See Armour v. Totty*, 486 S.W.2d 537, 538-39 (Tenn. 1972); *State v. Cothran*, 115 S.W.3d 513, 524 (Tenn. Crim. App. 2003).

However, lack of a nexus between the laptop and the solicitation offense does not mean that law enforcement had no reason to suspect that the vehicle would yield additional evidence related to the crime under investigation. As the State suggests, there was a reasonable probability that the vehicle contained additional condoms, the referenced "sexual items," or other evidence of criminal activity which would have been relevant to the prosecution. In making this determination, we consider the "nature of the

property sought, the normal inferences as to where a criminal would hide the evidence, and the perpetrator's opportunity to dispose of incriminating evidence," as well as whether the criminal conduct is an isolated instance or a protracted pattern of conduct. *State v. Reid*, 91 S.W.3d 247, 275 (Tenn. 2002).

The Defendant referenced a condom and "sexual items" in his text message to the victim. He insisted on confirming through a telephone conversation that the person he was communicating with was a child, and he changed the location of the meeting when he observed police activity in the area. The Defendant then brought a single condom with him to the late night, outdoor meeting with the child. Accordingly, law enforcement could have inferred that there was a "fair probability" that additional condoms or the referenced sexual items were in the car. *Yeargan,* 958 S.W.2d at 632.

The Defendant's attempt to conceal the location of his vehicle may also be factored into the probable cause determination. In *United States v. Whitner*, the defendant was asked about his residence and gave suspicious and deceptive answers, and the court concluded that the suspicious and deceptive responses, together with other information regarding his activities related to drugs, led to the inference that he was "storing some evidence of illegal activity at the apartment." 219 F.3d 289, 299 (3d Cir. 2000); *see also* <u>United States v. Caicedo</u>, 85 F.3d 1184, 1193 (6th Cir. 1996) (concluding that there was probable cause to search a home when the defendant was arrested in connection with the possession of a large amount of cocaine and subsequently lied about his address). Here, the Defendant drove to a location near the prearranged meeting spot in his vehicle and attempted to conceal the location of his vehicle by parking at a distance, at his sister's home, and answering questions regarding the vehicle's location in an "evasive" manner. When police found his vehicle, they discovered that there was a Tennessee license plate affixed on top of an Alabama license plate. We conclude that law enforcement could have relied on the Defendant's inexplicable evasiveness regarding his vehicle as one factor in the totality of the circumstances when making the probable cause determination.

We note also that at the time of the arrest, the exact contours of the Defendant's crime were not clear. The Defendant had done his best to entice a child to leave his home and go to a secluded area late at night, and he had indicated his desire to avoid adult detection by insisting on speaking with the child and by changing the meeting location to avoid police detection. The search of the vehicle was justified by probable cause to believe it contained additional evidence of the Defendant's criminal activity.

Given the totality of the circumstances, a rational inference is that the Defendant was concealing additional evidence in his vehicle which might bear on his planned

-12-

meeting with the minor. Accordingly, while we acknowledge that this issue is close, we conclude that there was sufficient probable cause to seize the vehicle.

## B. Impoundment

The Defendant suggests that his vehicle was improperly impounded and subjected to an administrative search as part of that impoundment. When a vehicle is taken into police custody, the police may properly inventory the contents. *State v. Roberge*, 642 S.W.2d 716, 720 (Tenn. 1982). The purpose of such a search is to protect the owner's property and to protect law enforcement against claims related to property loss. *Id.*; *State v. John Beasley Seay*, No. M2011-02769-CCA-R3-CD, 2013 WL 3777169, at *6 (Tenn. Crim. App. July 16, 2013).

The Defendant argues that his vehicle did not properly come into police custody because it was parked on private property, was not obstructing traffic, and a reasonable alternative to impoundment was to leave it in his sister's custody. In *Drinkard v. State*, 584 S.W.2d 650, 654 (Tenn. 1979), the Tennessee Supreme Court concluded that the seizure of a vehicle was unjustified because police denied the defendant the "reasonable alternative" of leaving the car in the care of his passenger, who was willing and able to assume custody. The court summarized the principle involved:

> [I]f the circumstances that bring the automobile to the attention of the police in the first place are such that the driver, even though arrested, is able to make his or her own arrangements for the custody of the vehicle, or if the vehicle can be parked and locked without obstructing traffic or endangering the public, the police should permit the action to be taken rather than impound the car against the will of the driver and then search it. Just cause to arrest the driver is not, alone, enough; there must also be reasonable cause to take his vehicle into custody.

*Id.* at 653; *see also State v. Crutcher*, 989 S.W.2d 295, 301 n.7 (Tenn. 1999). "In other words, the State must show that impounding the vehicle was necessary." *Jason Lee Fisher v. State*, No. M2014-02327-CCA-R3-PC, 2015 WL 5766521, at *5 (Tenn. Crim. App. Oct. 2, 2015), *perm. app. denied* (Tenn. Feb. 18, 2016). The prosecution has the burden of establishing an exception to the warrant requirement by a preponderance of the evidence. *State v. Watkins*, 827 S.W.2d 293, 295 (Tenn. 1992). Here, there was no necessity for impounding the vehicle which was parked, by permission, at a private residence. Accordingly, an inventory pursuant to the vehicle's impoundment does not provide a separate justification for the search.

-13-

However, because we have concluded that the seizure of the vehicle was justified by probable cause to believe it contained additional evidence of the Defendant's criminal activity, and because law enforcement had the option of searching it immediately or having it towed and subsequently searched pursuant to a warrant or the inventory exception, the search was proper. *State v. Clay Stuart Gregory*, No. M2012-00546-CCA-R3-CD, 2013 WL 6187919, at *20 (Tenn. Crim. App. Nov. 25, 2013) (holding that a warrantless search could be conducted after the seizure of the automobile); *Carrie Lynn Ronewicz*, 2012 WL 6719646, at *20 (Tenn. Crim. App. Dec. 26, 2012) (same).

## II. Search of Laptop's Contents

The Defendant asserts that the State's failure to introduce into evidence the affidavit accompanying the warrant makes the trial court's finding that the warrant was valid erroneous. The State argues that the defense has waived the issue regarding the validity of the warrant because the question was not presented to or ruled on by the trial court. The State attributes the failure to introduce the affidavit supporting the warrant into evidence to the fact that the warrant was not challenged in the motion to suppress.

The Defendant's motion to suppress challenged in very broad terms the search and seizure of the vehicle and moved to suppress "any evidence obtained from the seizure of the Defendant's vehicle." The motion did not specifically challenge the warrant. At the hearing, the Defendant agreed with the trial court that the issues were the "warrantless seizure of the automobile and its contents and a warrantless search of the interior of the automobile," as well as the seizure of the telephone. Sergeant Mobley testified that he prepared the affidavit to search the computer and any telephones some time after the seizure. He explained that he was conducting a fairly lengthy investigation which involved numerous interviews and that at some point he decided that he "needed to see" what was on the electronic equipment.[4] The defense then introduced a copy of the warrant, which was signed April 29, 2013. In presenting closing argument to the trial court at the suppression hearing, the defense did not argue that the warrant was insufficient or that the affidavit was lacking.

At the hearing, the trial court made oral findings from the bench. It found that it needed to determine the "sufficiency of the affidavit and the warrant itself." The court then found that "the affidavit supplied to the General Sessions Judge is adequate and does provide probable cause for [the] magistrate to issue a warrant." The Defendant did not object to this finding on the basis that the affidavit had not been made an exhibit, despite

---

[4] We note that the record in a separate appeal brought by the Defendant suggests that Sergeant Mobley had been investigating the crimes against the other victims and had interviewed the rape victim during this period. *See State v. Robert G. Thornton, Jr.*, No. M2015-01895-CCA-R3-CD.

the trial court's inquiry regarding whether the defense wished the court to address anything further. In its order denying the motion to suppress, the trial court further found that the search pursuant to the warrant was valid because the warrant was "based upon an affidavit that reliably stated facts sufficient to support probable cause to believe that evidence of a crime was likely to be found in the electronic memory, files and contents of the laptop and phones."

We agree with the State that this issue is waived. Neither the Defendant's written motion nor the Defendant's oral arguments at the suppression hearing challenged the sufficiency of the warrant. Accordingly, the State cannot be faulted for failing to present proof on the issue. Furthermore, the record suggests that the trial court was able to examine the affidavit as part of the proof at the hearing. The trial court made an explicit finding that the affidavit was sufficient, both from the bench and in its written order. The Defendant did not challenge this finding at the time. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). We are not able to revisit the trial court's determination that the affidavit was sufficient because the affidavit is not part of the appellate record. *See State v. Banks*, 271 S.W.3d 90, 169 (Tenn. 2008) (appendix) ("It is the burden of the Appellant to prepare a full and complete record for appellate review."); *State v. Bledsoe*, 226 S.W.3d 349, 357 (Tenn. 2007); Tenn. R. App. P. 24(b) (mandating that the appellant has the duty to prepare a record which conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal"). Accordingly, we do not reach the question of the sufficiency of the warrant as part of this appeal.

## CONCLUSION

Because there was probable cause to seize the Defendant's vehicle, we conclude that the trial court did not err in denying the Motion to Suppress.

_____
JOHN EVERETT WILLIAMS, JUDGE

-15-